UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARTELL JONES,

                    Plaintiff,                          Case No. 1:24-cv-1101

v.                                                      Honorable Jane M. Beckering

CHARLES STRICKLAND et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.)

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Enderle and Bonn. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) any personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claims against Defendants Eavey and Ugboma premised upon the denial of a meal tray;

(4) Plaintiff's Eighth Amendment claims premised upon verbal harassment; (5) Plaintiff's Eighth Amendment claims against Defendants Eavey and Ugboma premised upon the denial of meal tray; and (6) any intended Fourteenth Amendment due process claims premised upon the issuance of false misconducts and the deprivation of Plaintiff's personal property. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Bennett, Strickland, and Rutgers; and (2) Plaintiff's Eighth Amendment claims against Defendants Bennett, Strickland, Rutgers, Eavey, Rinckey, Henning, Ugboma, and Unknown Parties #1 and #2 premised upon the May 25, 2023 cell extraction, use of excessive force, failure to intervene in the use of force, and the subsequent failure to allow Plaintiff to shower and decontaminate his cell to remove the chemical agent.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the MDOC at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF personnel in their official and personal capacities: Deputy Warden Dale Bonn, Lieutenant Unknown Bennett, then-Acting Sergeant Charles Strickland, and Correctional Officers Michael Enderle, Unknown Rutgers, Unknown Eavey, Unknown Rinckey, Unknown Ugboma, Unknown Henning, and Unknown Parties #1 and #2.

Plaintiff alleges that at all relevant times, he was housed in cell 42 on A-Wing of ICF's Housing Unit 2. (Compl., ECF No. 1, PageID.4.) Plaintiff states that he "made multiple verbal complaints and filed an immense amount of grievances and a lawsuit (Case: 1:23-cv-00410-PLM-PJG) against Strickland, Enderle, Bonn, and other prison officials during his incarceration at ICF." (*Id.*, PageID.4–5.) Plaintiff avers that "[l]eading up to the events alleged in this Complaint," he

was "incessantly harassed, threatened, deprived food, issued falsified misconduct reports, and/or repeatedly placed on sham paper restrictions" by Defendants Bennett, Strickland, Rutgers, Eavey, Enderle, Rinckey, Ugboma, Henning, and other officials out of retaliation for his grievances and lawsuit. (*Id.*, PageID.5.)

On May 23, 2023, Defendants Ugboma, Enderle, Eavey, and Strickland were working in Housing Unit 2. (*Id.*, PageID.6.) Plaintiff claims that "[t]here is a prevalent presence at ICF of racism against prisoners and staff of African heritage amongst prison officials of Europe[an] ethnicity." (*Id.*) According to Plaintiff, Defendant Ugboma "is an immigrant from Africa and speaks with a heavy accent." (*Id.*) Defendants Strickland, Rutgers, Eavey, Enderle, and other officials often harass, ridicule, and mock Defendant Ugboma "while in the presence of prisoners." (*Id.*) Plaintiff claims further that Defendants Strickland, Rutgers, Eavey, Enderle, and other officials coerce Defendant Ugboma "into retaliating against prisoners on their behalf." (*Id.*)

Plaintiff alleges that on May 23, 2023, Defendant Enderle said to other officers, "Jones filed a lawsuit against us! Don't feed him!" (*Id.*) Defendant Eavey approached Plaintiff's cell door and said, "We're going to starve you to death for filing that lawsuit!" (*Id.*) Moments later, Defendant Ugboma started to serve meal trays to the prisoners from a "food cart." (*Id.*, PageID.6–7.) Defendant Ugboma ran out of trays before he reached Plaintiff's cell. (*Id.*, PageID.7.) After ordering more trays, Defendant Ugboma returned to Plaintiff's cell door and removed the lid from one of the trays. (*Id.*) Defendant Eavey then told Defendant Ugboma, "We told you not to feed him! Leave the tray and walk away!" (*Id.*) Defendant Ugboma responded, "Huh?" (*Id.*) Defendant Eavey said, "We said don't feed that grievance writing bitch! Put the lid back on the tray and walk away!" (*Id.*) When Defendant Ugboma said, "What?" Defendant Eavey replied, "I said put the lid back on the tray and walk away! He will eat when he stop[s] writing grievances!" (*Id.*) Defendant

Ugboma did so, and when Plaintiff requested a tray, Defendant Ugboma "became irate, argumentative, and verbally abusive." (*Id.*) Defendant Ugboma walked away from Plaintiff's cell without serving him a food tray. (*Id.*) Plaintiff claims that he experienced hunger pains as a result. (*Id.*, PageID.8.)

On May 24, 2023, Defendant filed a grievance against Defendants Ugboma, Enderle, Strickland, and other officials for denying him a food tray. (*Id.*) The next day, during first shift, Defendant Ugboma stopped at Plaintiff's cell door and called Plaintiff "derogatory names, threatened to fabricate misconduct reports against [Plaintiff] for filing the grievance . . ., and stated that [Defendant] Strickland was going to gas [Plaintiff] with chemical agents, set him up, and put him on a sham paper restriction on second shift." (*Id.*, PageID.9–10.)

During second shift, Defendants Rutgers and Eavey stopped at Plaintiff's cell. (*Id.*, PageID.10.) Defendant Rutgers said, "Grievance writing bitch, we're gonna gas you today and set you up with a case!" (*Id.*) Plaintiff responded, "You can't gas me or file criminal charges against me. I didn't do anything wrong." (*Id.*) Defendant Rutgers replied, "I can do whatever I want, prisoner! This is I-Max, we know how to set prisoners up and get away with it! You're gonna be next!" (*Id.*) Defendant Rutgers told Plaintiff that he had confiscated a shank from another prisoner and threatened to "conduct a sham cell extraction on [Plaintiff] and use the makeshift weapon to concoct false misconduct charges, criminal charges, and evidence against him." (*Id.*) Defendant Rutgers also threated to puncture himself with the shank to falsely claim that Plaintiff had stabbed him. (*Id.*, PageID.10–11.) Defendant Rutgers said, "Who do you think a judge and jury is gonna believe when we tell them you stabbed a CO during a cell extraction, us or a prisoner!" (*Id.*, PageID.11.) Defendant Eavey added, "Get ready to be set up! We're gonna get you life in prison!" (*Id.*)

Defendants Rutgers and Eavey "further harassed and threatened" Plaintiff, "and called him derogatory names before walking away." (*Id.*) Moments later, Defendant Rutgers returned to Plaintiff's cell with Defendant Strickland. (*Id.*) Defendant Strickland told Plaintiff, "We're gonna teach you not to file grievances and lawsuits against us! Get ready to be gassed! It won't be no cuffing up!" (*Id.*, PageID.11–12.) Defendant Strickland also told Plaintiff that after he was gassed, they would "come in there and take all your shit and put you on paper restriction! I'm gonna make sure you can't write grievances or work on your lawsuits!" (*Id.*, PageID.12.) Defendants Strickland and Rutgers walked away after calling Plaintiff derogatory names and harassing and threatening him. (*Id.*)

Defendant Bennett authorized Defendant Strickland to conduct a cell extraction against Plaintiff. (*Id.*, PageID.13.) Plaintiff claims that Defendant Bennett did not talk to him "or attempt to resolve the underlying alleged issue prior to giving [Defendant] Bennett authorization." (*Id.*) A response team consisting of Defendants Strickland, Rutgers, Eavey, Rinckey, and Unknown Parties #1 and #2 was assembled. (*Id.*) At the time, Defendant Henning was assigned to Housing Unit 2's Officers' Control Booth/Bubble. (*Id.*)

The response team approached Plaintiff's cell door "in riot gear with chemical agents, a shield, restraints, and a handheld video camera." (*Id.*) According to Plaintiff, Defendant Unknown Party #1 "intentionally positioned the handheld video camera's lens outside the view of [Plaintiff's] cell door window as pretext to conceal their misconduct and the conduction of a sham cell extraction." (*Id.*)

Plaintiff complied with Defendant Strickland's order to place his hands behind him and position his back by the slot of the cell door. (*Id.*, PageID.14.) Defendant Strickland then "falsely and repeatedly yelled, 'Remove the paper from the back window!' even though there was no paper

covering the window." (*Id.*) Plaintiff loudly said, "There's no paper covering the window! I am compliant with all orders!" (*Id.*) Defendant Strickland yelled, "Turn around and cuff up!" (*Id.*) Plaintiff responded that he was complying and that his back was already facing the slot to be cuffed. (*Id.*) Defendant Strickland "continued to yell false orders as pretext to create the false appearance to surveillance cameras that [Plaintiff] was being disruptive and non-compliant." (*Id.*)

While Plaintiff's back was facing the slot, Defendant Strickland opened the slot, "discharged a can containing [a] chemical agent, threw it inside the cell, then closed and locked the slot." (*Id.*) Plaintiff experienced "excruciating pain, choking, coughing, difficulty breathing, and burning of his skin" because of the chemical agent. (*Id.*, PageID.15.) After locking the slot, Defendant Strickland "again yelled false orders." (*Id.*) Defendant Strickland prevented Plaintiff from being placed in restraints and being removed from the cell "by intentionally keeping the slot of his cell door locked while repeatedly yelling, "Take the paper out of the window and turn around and cuff up!" (*Id.*) Plaintiff claims further that Defendant Strickland intentionally prolonged Plaintiff's exposure to the chemical agent. (*Id.*) He avers that Defendants Rutgers, Eavey, Rinckey, Defendants Unknown Parties #1 and #2, and Henning observed this use of excessive force but did not intervene. (*Id.*, PageID.15–16.)

After some time had passed, Defendant Strickland opened the slot and ordered Plaintiff to "submit to restraints." (*Id.*, PageID.16.) Plaintiff again placed his hands behind him and placed his back against the slot. (*Id.*) Defendant Rutgers "yanked [Plaintiff's] hands and arms through the slot then began twisting his wrists and bending his thumbs backwards, for purpose of causing him pain, while repeatedly yelling, "Stop resisting!" (*Id.*) Defendant Rutgers continued to twist Plaintiff's wrists and bend his thumbs after placing Plaintiff in restraints. (*Id.*) Defendants

Strickland, Eavey, Rinckey, and Unknown Parties #1 and #2 saw the use of force but failed to intervene. (*Id.*, PageID.16–17.)

Defendants Strickland, Rutgers, Eavey, Rinckey, and Unknown Parties #1 and #2 then escorted Plaintiff to Housing Unit 2's shower area and placed him in a cage. (*Id.*, PageID.17.) Plaintiff repeatedly asked "that they provide him with medical attention, soap[,] and a shower to decontaminate himself of the chemical agent, and uncontaminated clothes." (*Id.*) Those Defendants, however, "intentionally turn[ed] off the water of Housing Unit 2." (*Id.*, PageID.17–18.) Those Defendants also "provided [Plaintiff] clothes from his cell that [were] contaminated with chemical agent during the cell extraction." (*Id.*, PageID.18.) Non-party Registered Nurse Massey saw Plaintiff while he was confined in the cage, and Plaintiff told her that he was experiencing chest pain and difficulty breathing. (*Id.*) Nurse Massey took Plaintiff's vital signs. (*Id.*)

Plaintiff goes on to state that Defendants Bennett, Strickland, Rutgers, Eavey, Enderle, Rinckey, Ugboma, Henning, and others have a practice of retaliating against prisoners by confiscating their property and destroying their electronics. (*Id.*) Plaintiff claims that while he was confined in the cage, "Rutgers and other Defendants entered [his] cell." (*Id.*) Defendant Rutgers damaged Plaintiff's JP5 player "by submerging it in toilet water." (*Id.*, PageID.18–19.) "Rutgers and other Defendants confiscated [Plaintiff's] personal property, legal papers, and writing material while he was confined in the cage." (*Id.*, PageID.19.) Plaintiff alleges further that "Defendants searched then stored [Plaintiff's] personal property in the supply closet of Housing Unit 2 where there are no surveillance cameras." (*Id.*)

Plaintiff was placed back into his cell without being given an opportunity to shower. (*Id.*) He "noticed that there was chemical agent throughout the cell, including on the floor, walls, and

his mattress." (*Id.*) During rounds, Plaintiff told Defendant Bennett that Defendants Strickland, Rutgers, Eavey, Rinckey, Henning, and Unknown Parties #1 and #2 "subjected him to excessive force during a sham cell extraction, confiscated his property, and placed him on a sham paper restriction in retaliation for filing grievances and a lawsuit." (*Id.*, PageID.20.) Bennett responded, "I know. I'm the one who ordered the cell extraction. Stop writing grievances and filing lawsuits against my officers or the next time it'll be worse." (*Id.*)

On various occasions, Plaintiff told Defendants Bennett, Rutgers, and Henning "that his body, clothes, mattress, and cell were contaminated with chemical agent and requested . . . a shower, clean clothes, and to have his mattress and cell cleaned." (*Id.*) His requests were denied. (*Id.*) Plaintiff alleges that Defendants Bennett, Strickland, Rutgers, Eavey, Rinckey, Ugboma, Henning, and Unknown Parties #1 and #2 were all aware that Plaintiff's cell was contaminated and "made no reasonable effort to decontaminate" Plaintiff and his cell. (*Id.*, PageID.20–21.)

Defendant Rutgers continued to harass Plaintiff. (*Id.*, PageID.21.) During rounds, Defendant Rutgers said, "You won't be able to use your player after what I did to it! . . . I got your other property in the back room where there's no cameras and I'm pissing on it!" (*Id.*) Defendant Rutgers also accompanied Nurse Massey while she distributed medications to inmates in Housing Unit 2. (*Id.*) During that time, Defendant Strickland told Plaintiff, "I told you not to cry like a bitch and that it wouldn't be no cuffing up! . . . I pissed on your clothes! How does it smell? . . . I got all your papers and pens, let's see how you file your grievances and lawsuits on paper restriction!" (*Id.*, PageID.21–22.)

Subsequently, Defendant Strickland falsified a misconduct report and charged Plaintiff with disobeying a direct order. (*Id.*, PageID.23.) Plaintiff alleges that in the misconduct report, Defendant Strickland falsely stated that Plaintiff "refused to comply with orders to remove paper

from his back window." (*Id.*) As a result, Plaintiff "received fifteen (15) days loss of privileges and an increase in security classification points." (*Id.*)

Defendant Strickland also filed a Restriction of Segregation Property and Privileges. (*Id.*) He falsely stated that Plaintiff "had paper covering his back window as pretext to impose a paper restriction against [Plaintiff]." (*Id.*) Plaintiff's personal property, legal papers, and writing materials were confiscated, and Plaintiff was placed on a 30-day paper restriction as a result. (*Id.*, PageID.24.) Plaintiff claims that Defendant Bonn was responsible for imposing the paper restriction. (*Id.*)

Defendant Rutgers also issued a false misconduct report charging Plaintiff with disobeying a direct order. (*Id.*) Defendant Rutgers falsely stated that Plaintiff "refused to comply with orders to come out of his cell for a cell search." (*Id.*) As a result, Plaintiff received loss of privileges and an increase in his security classification points. (*Id.*, PageID.24–25.)

Defendant Rutgers also issued a false misconduct report charging Plaintiff with possession of dangerous contraband. (*Id.*, PageID.25.) In the report, Defendant Rutgers falsely stated that "he found sixteen (16) cups of fluid inside [Plaintiff's] cell that appeared to be urine as pretext to impose sanctions against [Plaintiff]." (*Id.*) Plaintiff claims that the fluid was water that he was saving because of officials "depriving him of food and threatening to turn off his water." (*Id.*) Non-party Hearing Officer S. Morris found Plaintiff not guilty of the possession of dangerous contraband misconduct report. (*Id.*)

Plaintiff goes on to allege that Defendant Rutgers told him, "I'm gonna give some of your property away! . . . The more you talk the more will be missing and the less you will have! . . . I'll be here all week! . . . Your property will be f***ed by the time you get it back!" (*Id.*, PageID.26.) Plaintiff claims that Defendant Rutgers took some of his books, magazines, and legal documents,

and placed them in another prisoner's duffel bag. (*Id.*) The duffel bag was given to another prisoner. (*Id.*)

Plaintiff also claims that he "remained in the contaminated cell and was not provided with a shower until after he was transferred to another facility on June 8, 2023." (*Id.*, PageID.27.) As a result, Plaintiff "experienced excruciating pain, burning of his skin, and rashes." (*Id.*)

Based on the foregoing, Plaintiff alleges the following claims for relief: (1) Defendants Enderle, Eavey, and Ugboma violated his First and Eighth Amendment rights by depriving Plaintiff of food; (2) Defendants Bennett, Strickland, Rutgers, Eavey, Rinckey, Henning, and Unknown Parties #1 and #2 violated his First and Eighth Amendment rights by using excessive force and/or failing to intervene to stop the use of force; (3) Defendants Bennett, Strickland, Rutgers, Eavey, Rinckey, Ugboma, Henning, and Unknown Parties #1 and #2 violated his Eighth Amendment rights by failing to allow Plaintiff to decontaminate his body, and for failing to decontaminate Plaintiff's cell, after the use of a chemical agent; (4) Defendants Bonn, Strickland, and Rutgers violated his First Amendment rights by fabricating documents and imposing a sham paper restriction; and (5) Defendant Rutgers violated his First Amendment rights by damaging and subjecting Plaintiff's personal property to theft. (*Id.*, PageID.32–34.)

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (Id., PageID.35.)

Plaintiff has carefully identified the constitutional rights violations for which he seeks relief. He confines his claims to violations of his First Amendment rights and his Eighth Amendment rights. Nonetheless, Plaintiff's complaint can also be liberally construed to assert an additional Eighth Amendment claim premised upon verbal harassment by several Defendants, as well as Fourteenth Amendment due process claims premised upon the alleged false misconducts

and the deprivation of Plaintiff's personal property. Although "it is not within the purview of the district court to conjure up claims never presented," *Frengler v. General Motors*, 482 F. App'x 975, 977 (6th Cir. 2012), the Court will address these claims as well.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Non-specific Allegations Regarding "Patterns" and "Practices"

Throughout Plaintiff's complaint, he makes references to patterns of behavior or practices of prison officials at ICF. For example, Plaintiff states:

> There is a conspicuous pattern at ICF of prison officials falsifying misconduct reports against prisoners, depriving prisoners of food, and/or using excessive force against prisoners after the prisoners have provided them with some provocation, such as filing grievances, assaulting an officer, name calling, or refusing to obey minor rules.

(Compl., ECF No. 1, PageID.5, ¶ 15.) Similarly, Plaintiff alleges:

> Bennett, Strickland, Rutgers, Eavey, Enderle, Rinckey, Ubgoma, Henning, and other prisoner officials at ICF have a practice of using food deprivation as a form of corporal punishment and discipline against prisoners.

(*Id.*, ¶ 18; *see also* PageID. 6, 8–9, 12, 17–19, 22–23, 25–26, 28–30, ¶¶ 20, 22–24, 42–45, 47–49, 67, 102–103, 110–111, 115, 117, 134–137, 153–155, 166, 176–178.) Essentially, Plaintiff alleges that every specific constitutional violation he suffered was consistent with the patterns of behavior and normal practices of the Defendants and others at ICF.

Although factual allegations regarding the patterns of behavior and practices at ICF may certainly be relevant to Plaintiff's claims, Plaintiff, as a *pro se* prisoner, may not bring suit for constitutional violations flowing from such patterns and practices to the extent they were perpetrated against other prisoners. While 28 U.S.C. § 1654 authorizes a party to conduct a case on their own behalf, the Sixth Circuit has consistently interpreted § 1654 "as prohibiting pro se litigants from trying to assert the rights of others." *Olagues v. Timken*, 908 F.3d 200, 203 (6th Cir. 2018) (collecting cases); *see also Crawford v. United States Dep't of Treasury*, 868 F.3d 438, 455

(6th Cir. 2017) ("Generally, a plaintiff must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (stating that "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners").

The Court has addressed Plaintiff's allegations of specific constitutional violations committed against him below. To the extent Plaintiff seeks relief for the violations committed against others, however, he has failed to state a claim.

### B.    Official Capacity Claims

As noted *supra*, Plaintiff sues all Defendants in their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*,

13

803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory and injunctive relief, as well as damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiff's complaint does not allege an ongoing violation of federal law or seek relief properly characterized as prospective. Plaintiff has been transferred from ICF to AMF. The Sixth Circuit has held that transfer to another prison facility moots claims for declaratory and injunctive relief. *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying the rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be

subjected to the illegal conduct again. *See, e.g.*, *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495–96. Accordingly, Plaintiff cannot maintain any official capacity claims for declaratory relief, and his official capacity claims will be dismissed in their entirety.[1]

### C.    Personal Capacity Claims

#### 1.    First Amendment Retaliation Claims

Plaintiff contends that some of the named Defendants retaliated against him, in violation of his First Amendment rights, for his grievances and lawsuit.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff contends that he engaged in protected conduct by filing grievances, orally voicing complaints, and filing a lawsuit. Plaintiff, therefore, has adequately alleged protected conduct for

---

[1] To the extent Plaintiff seeks declaratory relief against Defendants in their personal capacities, such claims will be dismissed for the same reason as Plaintiff's claims for declaratory relief against Defendants in their official capacities.

purposes of his retaliation claims. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."). The Court considers Plaintiff's allegations regarding the second and third elements for each alleged adverse action below.

### a.    Denial of Meal Tray

Plaintiff first contends that Defendants Enderle, Eavey, and Ugboma violated his First Amendment rights by denying him a meal tray on one occasion.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell*, 308 F.3d at 606 (emphasis in original).

The Sixth Circuit Court of Appeals recently concluded that the denial of one meal does not rise to the level of adverse action. *See Moore v. Liewert*, No. 22-2056, 2023 WL 8378827, at *3 (6th Cir. Aug. 16, 2023). Plaintiff's retaliation claims against Defendants Enderle, Eavey, and Ugboma regarding the denial of a meal tray, therefore, fail at the second step of the analysis. Accordingly, such claims will be dismissed.

16

**b.    Paper Restriction**

Plaintiff suggests that Defendant Bonn violated his First Amendment rights by "fabricating documents." (Compl., ECF No. 1, PageID.34.) Specifically, Plaintiff contends that Defendant Bonn was responsible for imposing a 30-day paper restriction against him. (*Id.*, PageID.24.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

With respect to Defendant Bonn, Plaintiff merely alleges the ultimate fact of retaliation. He does not present any facts to suggest that Defendant Bonn was even aware of the grievances and lawsuit he had filed, nor does he allege any facts to suggest that Defendant Bonn was aware of his oral complaints. Moreover, Plaintiff has not presented any facts to support his conclusion that Defendant Bonn placed him on a 30-day paper restriction because of Plaintiff's protected conduct. Accordingly, Plaintiff's speculative allegation fails to state a claim, and his First Amendment retaliation claim against Defendant Bonn will be dismissed.

####    c.    Cell Extraction/Use of Force/False Misconducts/Deprivation of Personal Property

Plaintiff contends that Defendant Bennett retaliated against him by authorizing a sham cell extraction, that Defendants Strickland and Rutgers retaliated against him during the cell extraction by using excessive force, that Defendants Strickland and Rutgers retaliated by issuing false misconduct charges, and that Defendant Rutgers retaliated by damaging and depriving Plaintiff of his personal property.

Plaintiff's allegations are sufficient to allege that these individuals engaged in adverse action. Moreover, Plaintiff has alleged facts suggesting that these individuals took these actions because of Plaintiff's grievance and lawsuit activity. Plaintiff's First Amendment retaliation claims against Defendants Bennett, Strickland, and Rutgers, therefore, may not be dismissed on initial review.

###    2.    Eighth Amendment Claims

Plaintiff suggests that many of the named Defendants violated his Eighth Amendment rights in numerous ways.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

18

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Verbal Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon verbal harassment by many of the named Defendants. The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").[2] Accordingly, any Eighth Amendment claims premised upon verbal harassment will be dismissed.

### b.    Denial of Food Tray

Plaintiff alleges that Defendants Enderle, Eavey, and Ugboma violated his Eighth Amendment rights on May 23, 2023, by denying him a meal tray. However, "[c]ourts have

---

[2] In *Small v. Brock*, 963 F.3d 539 (6th Cir. 2020), the Sixth Circuit concluded that "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threat constitute[d] conduct so objectively serious as to be 'antithetical to human dignity.'" *Id*. at 541 (quoting *Hope v. Pelzer*, 536 U.S. 730, 745 (2002)). The conduct in the present case did not involve either a threat to Plaintiff's life or any demonstration of the means to carry it out, and it was not a repeated occurrence.

consistently found that missing a single meal does not rise to the level of a constitutional violation."
*Marr v. Case*, No. 1:07-cv-823, 2008 WL 191326, at *3 (W.D. Mich. Jan. 18, 2008); *see also*
*Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not
an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011)
(denial of five meals over three consecutive days, and a total of seven meals over six consecutive
days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health
suffered); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a
prisoner only one meal per day for 15 days did not violate the Eighth Amendment, because the
meals provided contained sufficient nutrition to sustain normal health). Accordingly, while the
Court does not condone Defendants' failure to provide a meal tray to Plaintiff, the fact that Plaintiff
missed one meal does not rise to the level of an Eighth Amendment violation. Accordingly,
Plaintiff's Eighth Amendment claims against Defendants Enderle, Eavey, and Ugboma premised
upon the deprivation of one meal tray will be dismissed.

### c.    Cell Extraction/Excessive Force/Failure to Intervene/Failure to Decontaminate

As set forth *supra*, Plaintiff contends that Defendants Bennett, Strickland, Rutgers, Eavey,
Rinckey, Henning, Ugboma, and Unknown Parties #1 and #2 were all personally involved in the
cell extraction by authorizing the cell extraction, using the chemical agent against Plaintiff,
twisting Plaintiff's wrists and thumbs during and after placing him in restraints, failing to intervene
to stop the use of force, failing to allow Plaintiff to shower after the use of the chemical agent, and
failing to decontaminate Plaintiff's cell and clothing following use of the chemical agent. In light
of Plaintiff's allegations, Plaintiff's Eighth Amendment claims premised upon this series of events
cannot be dismissed upon initial review.

### 3.     Fourteenth Amendment Claims

Although Plaintiff does not invoke the protection of the Fourteenth Amendment, the facts Plaintiff has alleged might be construed as an attempt to assert Fourteenth Amendment due process claims premised upon the alleged false misconducts and the deprivation of Plaintiff's personal property. The Court considers those claims in turn below.

### a.     False Misconducts

Plaintiff alleges that that Defendants Strickland and Rutgers each issued him a misconduct report charging him with disobeying a direct order, and that Plaintiff was found guilty of each misconduct. (Compl., ECF No. 1, PageID.23, 24.) Plaintiff received sanctions in the form of loss of privileges and an increase in security classification points. (*Id.*) Defendant Rutgers also issued a misconduct report charging Plaintiff with possession of dangerous contraband, but Plaintiff was found not guilty of that charge. (*Id.*, PageID.25.)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient" *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest

22

protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

First, with respect to the misconduct ticket charging Plaintiff with possession of dangerous contraband, Plaintiff's complaint clearly indicates that Plaintiff was found not guilty. There is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Accordingly, any intended procedural due process claim based upon that misconduct charge will be dismissed.

Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD. Disobeying a direct order is a class II misconduct.

(ECF No. 1-2, PageID.49; ECF No. 1-5, PageID.55.) The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time—such as class II misconducts—are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, the loss of privileges sanction involved the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E (eff. Apr. 18, 2022). Such a sanction does not affect the duration of Plaintiff's sentence or impose an atypical and significant hardship on Plaintiff. *See Ingram*, 94 F. App'x at 273; *Carter*, 69 F. App'x at 680. Furthermore, although Plaintiff alleges that he received an increase in security classification points, the Supreme Court has held that a prisoner has no constitutional right to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Accordingly, any intended Fourteenth Amendment procedural due process claims premised upon Plaintiff's receipt of the allegedly false misconducts will be dismissed.

### b.    Deprivation of Property

As set forth above, Plaintiff contends that numerous Defendants deprived him of various items of his personal property. Any Fourteenth Amendment claims based upon the deprivation of these items, however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, a person deprived of property by a "random and unauthorized act of a state employee," *id*. at 541, including "the unauthorized failure of agents of the State to follow established state procedure," *id*. at 543, has "not alleged a violation of the Due Process Clause of the Fourteenth Amendment," *id*., where "[t]he [s]tate provides a remedy to persons who believe they have suffered a tortious loss at the hands of the [s]tate," *id*., and the state "remedies provided could have fully compensated the [plaintiff] for the . . . loss he suffered . . . they [can be] sufficient to satisfy the requirements of due process," *id*. at 544. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate and, indeed, Plaintiff has state post-deprivation remedies available to him. For example, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Accordingly, Plaintiff fails to state Fourteenth Amendment due process claims regarding the deprivation of his property.

**Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants Enderle and Bonn will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) any personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's First Amendment retaliation claims against Defendants Eavey and Ugboma premised upon the denial of a meal tray; (4) Plaintiff's Eighth Amendment claims premised upon verbal harassment; (5) Plaintiff's Eighth Amendment claims against Defendants Eavey, and Ugboma premised upon the denial of meal tray; and (6) any intended Fourteenth Amendment due process claims premised upon the issuance of false misconducts and the deprivation of Plaintiff's personal property. The following claims remain in the case: (1) Plaintiff's First Amendment retaliation claims against Defendants Bennett, Strickland, and Rutgers; and (2) Plaintiff's Eighth Amendment claims against Defendants Bennett, Strickland, Rutgers, Eavey, Rinckey, Henning, Ugboma, and Unknown Parties #1 and #2 premised upon the May 25, 2023 cell extraction, use of excessive force, failure to intervene in the use of force, and the subsequent failure to allow Plaintiff to shower and decontaminate his cell to remove the chemical agent.

An Order consistent with this Opinion will be entered.


Dated:   December 6, 2024                      /s/ Jane M. Beckering
                                               Jane M. Beckering
                                               United States District Judge